# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

| | |
|---|---|
| **DELTA FUEL CO LLC** | **CIVIL ACTION NO. 24-1775** |
| **VERSUS** | **JUDGE EDWARDS** |
| **NATALIE MCDANIEL** | **MAGISTRATE JUDGE HORNSBY** |

## MEMORANDUM RULING & ORDER

Before the Court is Delta Fuel Company, L.L.C.'s ("Plaintiff" or "Delta Fuel") Motion for Preliminary Injunctive Relief (R. Doc. 2). In this motion, Delta Fuel seeks to enjoin its former employee, Natalie McDaniel ("Defendant" or "McDaniel") from breaching the parties' Confidentiality and Restrictive Covenant Agreement (the "Agreement"). Specifically, Delta Fuel alleges that McDaniel is in violation of the Defend Trade Secrets Act, the Louisiana Uniform Trade Secrets Act, and is in breach of her non-competition, non-solicitation, and non-disclosure obligations under the Agreement.[1] McDaniel opposes the motion, contending that the non-compete and non-solicitation provisions of the Agreement are unenforceable under Louisiana Law and, even if it is enforceable, she has not violated any of her obligations under the Agreement, including non-disclosure.[2] For the following reasons, Delta Fuel's request for Preliminary Injunctive Relief is **GRANTED**.

---

[1] R. Doc. 2.
[2] R. Doc. 17. McDaniel's brief does not address the allegations pertaining to the Defend Trade Secrets Act, 18 U.S.C. §1836, or the Louisiana Uniform Trade Secrets Act, La. R.S. 51:1431, et seq. The evidence adduced at the hearing was limited to the allegations of breach of the Agreement and the Court's ruling will be limited accordingly.

## PROCEDURAL BACKGROUND

On December 20, 2024, the Court granted a temporary restraining order against McDaniel under Federal Rule of Civil Procedure 65(b).[3] On January 23, 2025, a hearing was held on Delta Fuel's request for a preliminary injunction. Delta Fuel presented testimony from its owner and President, Adam Vegas ("Vegas"), and employees, Jeffery Wood and Michael Schofield. Delta Fuel also called McDaniel as an adverse witness. McDaniel presented testimony from Mason Duncan, Chief Executive Officer of her current employer TFS Gas, LLC ("TFS Gas") and TFS Gas' parent company, Texas Fueling Services, Inc. ("Texas Fuel"). McDaniel also testified on her own behalf.

## FACTS

Delta Fuel is a Louisiana limited liability company with its principal business office in Natchez, Mississippi. Delta Fuel is a bulk provider of a wide range of fuel and lubricant products and services including but not limited to diesel, gasoline, and other chemicals. Delta Fuel's business spans several states, including Louisiana, Mississippi, Texas, New Mexico, Oklahoma, and Arkansas.

McDaniel began working for Delta Fuel as a sales representative in 2017.[4] In this role, she marketed and sold bulk fuel and lubricants, including diesel, primarily in the Haynesville Shale area, which spans east Texas and northwest Louisiana.

---

[3] R. Doc. 5. The restraining order was extended by consent of the parties to the time of the hearing on the preliminary injunction. The Court found that the grounds for originally granting the temporary restraining order warranted its extension to January 30, 2025. R. Doc. 29.
[4] R. Doc. 2 at 2.

On May 25, 2022, McDaniel and Delta Fuel entered into the Agreement which forms the basis of the instant dispute.[5] The relevant provisions of the Agreement will be discussed further hereinbelow. McDaniel does not dispute that she entered into the Agreement, nor does she claim any fraud, misrepresentation, or vice of consent in entering into the Agreement. She confirmed that she understood the Agreement's terms at the time of its execution. Additionally, Delta Fuel permitted McDaniel to use her company-paid cellphone for both personal and business purposes. It is undisputed that McDaniel's cellphone contained Delta Fuel's client contact information, which McDaniel understood to be confidential.

McDaniel's employment with Delta Fuel ended on October 18, 2024.[6] Upon her termination, McDaniel returned the cellphone to Delta Fuel, but all of the client contact information had been erased. Delta Fuel's client contact information had been transferred to McDaniel's new cellphone. The parties agree that McDaniel returned some of Delta Fuel's client contact information upon Delta Fuel's request.[7]

On November 2, 2024, she began working for TFS Gas in sales, specifically liquified natural gas ("LNG") business development.[8] TFS Gas exclusively sells LNG and compressed natural gas ("CNG") products and services.[9] TFG Gas is wholly owned by Texas Fuel. Texas Fuel and TFS Gas share leadership (they have the same

---

[5] The instant Confidentiality and Restrictive Covenant Agreement is the not the first of its kind executed by the parties.
[6] R. Doc. 2 at 2.
[7] It is disputed whether, at some point, this cooperation ended.
[8] Delta Fuel originally asserted that McDaniel worked for Texas Fuel, the parent company of TFS Gas.
[9] R. Doc. 17 at 7.

Chief Executive Officer) and advertises employment opportunities with both companies through the same website. Texas Fuel provides traditional fuel services, including diesel related products and services. McDaniel works for TFS Gas in the same geographic area that she worked for Delta Fuel.

Delta Fuel considers TFS Gas to be its competitor for two main reasons. First, Delta Fuel and TFS Gas both market LNG products and services. While Delta Fuel has never sold liquid natural gas or compressed natural gas, it has quoted LNG products and services to its customers as an option that it can provide through a third party. In fact, while employed with Delta Fuel, McDaniel sent one of these LNG quotes herself. Second, LNG and CNG are products that replace diesel. Accordingly, if TFS Gas sells more LNG and CNG in Delta Fuel's market, it may reduce Delta Fuel's business for diesel. Delta Fuel also views the relationship between TFS Gas and Texas Fuel to be competitive to Delta Fuel's business because customers who buy LNG or CNG from TFS Gas will want to purchase other bulk fuels from the same or closely affiliated company, like Texas Fuel.

McDaniel does not consider TFS Gas to be a competitor to Delta Fuel for two main reasons. First, Delta Fuel has not actually sold LNG or CNG. Second, Delta Fuel does not have the infrastructure to sell LNG or CNG and would need to partner with a third party to provide LNG or CNG to its customers.

McDaniel testified that after she began working for TFS Gas, she went to visit one of Delta Fuel's customers to whom she had previously sold diesel on Delta Fuel's behalf. The purpose of this visit was to convince this customer to purchase LNG from

TFS Gas, which would reduce their need for diesel. She further testified that she facilitated a diesel order between this customer and Texas Fuel after she informed them that she was no longer employed with Delta Fuel. It is not disputed that after McDaniel left Delta Fuel's employ, she facilitated other orders of diesel for Texas Fuel from Delta Fuel's customer, which resulted in a loss of revenue to Delta Fuel in the range of $100,000 to $140,000.

Delta Fuel sent correspondence to McDaniel on November 27, 2024, reminding her of obligations to Delta Fuel under the parties' Agreement and providing notice that she was in violation thereof.[10] Delta Fuel maintains that McDaniel has refused to comply with her obligations under the Agreement notwithstanding Delta Fuel's cease and desist demands.[11]

These facts led to the instant suit. Delta Fuel asserts that by virtue of McDaniel's position with TFS Gas, she has violated and continues to violate various provisions of the Agreement.[12] Specifically, Delta Fuel alleges that McDaniel breached her non-competition obligation and her non-solicitation obligation by diverting business from Delta Fuel to her new employer and Texas Fuel.[13] Delta Fuel also asserts that McDaniel is likely using and will presumably continue to use its client information for her own and/or her new employer's benefit, in violation of her non-disclosure obligation.[14]

---

[10] R. Doc. 1-2 at 1-3.
[11] R. Doc. 2-2 at 8.
[12] R. Doc. 2 at 3-4.
[13] R. Doc. 2 at 4; *see also*, R. Doc. 1 at 7-8.
[14] R. Doc. 2 at 4; *see also*, R. Doc. 1 at 6-7.

## I. LAW & ANALYSIS

A plaintiff seeking a preliminary injunction must prove each of the following four factors: (1) a substantial likelihood of success on the merits; (2) a substantial threat that failure to grant the injunction will result in irreparable injury; (3) that the threatened injury outweighs any damage that the injunction may cause the opposing party; and (4) that the injunction will not disserve the public interest."[15] Then these factors are considered as a whole to determine whether "they collectively favor granting the injunction."[16] Any injunctive relief is considered "an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by clear showing, carries the burden of persuasion."[17]

Ultimately, after applying these standards, the Court finds that Delta Fuel has met its burden of convincing the Court that a preliminary injunction is appropriate prohibiting and enjoining McDaniel from competing against Delta Fuel, soliciting Delta Fuel's clients, and using Delta Fuel's client information.

### A. Delta Fuel has demonstrated a substantial likelihood of success on the merits.

Delta Fuel alleges that McDaniel is in breach of her non-competition, non-solicitation, and nondisclosure obligations under the Agreement. Regarding the

---

[15] *Newsouth Communications Corp. v. Universal Telephone Co.*, 2002 WL 31246558 at *10 (E.D. La. 10/4/02) (citing *Allied Marketing Group, Inc. v. CDL Marketing, Inc.*, 878 F.2d 806, 809 (5th Cir.1989)).
[16] *Newsouth,* 2002 WL 31246558 at *11 (citations omitted).
[17] *Newsouth,* 2002 WL 31246558 at *11.

criteria of substantial likelihood of success, "the plaintiff must present a prima facie case, but need not prove that he is entitled to summary judgment."[18]

The Court finds that Delta Fuel has carried its burden of proving a substantial likelihood of success on the merits of its claim for breach of contract. In making this finding, the Court rejects McDaniel's arguments that **(1)** the Agreement is unenforceable and **(2)** Delta Fuel cannot prove that McDaniel has violated her obligations under the Agreement.[19]

### 1. The Agreement is enforceable.

Delta Fuel maintains that the Agreement complies with the requirements of Louisiana law.[20] McDaniel contends that there is no substantial likelihood that Delta Fuel will succeed on the merits inasmuch as the Agreement is unenforceable because it does not conform to the requirements of La. R.S. 23:921.

Louisiana law has a strong public policy against the restraint of trade, including non-competition and non-solicitation agreements.[21] Non-competition agreements are unenforceable under Louisiana Law unless they fit into one of the narrow exceptions contained in La. R.S. 23:921.[22] A non-competition agreement must have: "(1) a two-year maximum duration; (2) a list of the areas in which the former employee is restrained, and (3) competition between the former employee and

---

[18] *Daniels Health Sciences, L.L.C. v. Vascular Health Sciences, L.L.C.*, 710 F.3d 579, 582 (5th Cir. 2013) (citation omitted).
[19] R. Doc. 17 at 9-16.
[20] R. Doc. 2-2 at 14-15.
[21] *See SWAT 24 Shreveport Bossier, Inc. v. Bond*, 808 So.2d 294, 298 (La. 2001).
[22] *Waguespack v. Medtronic, Inc.*, 185 F. Supp. 3d 916, 928 (M.D. La. 2016).

employer."[23] Non-solicitation provisions are subject to the same restrictions as non-compete provisions.[24] "A non-competition agreement is a contract between the parties; therefore, it should be construed according to the general rules of interpretations of contracts found in the Louisiana Civil Code."[25] Due to Louisiana's public policy disfavoring non-compete agreements, these covenants are "strictly construed against the party seeking their enforcement."[26]

McDaniel contends that the Agreement is wholly unenforceable because the non-compete and non-solicitation provisions are **(a)** not reasonably limited in geographic scope and **(b)** overbroad in scope of restricted activities.[27] After careful review, the Court finds these arguments unavailing.

a. Geographic Scope

Both the non-compete provision of Section 2(b) and the non-solicitation provision of Section 2(c) of the Agreement restrict McDaniel's activities within Delta Fuel's "Territory" for a period of two years following the end of the employment relationship. The parishes, counties, and municipalities that make up Delta Fuel's "Territory," as used in the Agreement, are listed in Exhibit A attached thereto.[28] The Territory includes all sixty-four (64) parishes in Louisiana, fifty (50) counties in Mississippi, one hundred thirteen (113) counties in Texas, two (2) counties in New

---

[23] *Deep South Communications, LLC v. Fellegy*, 652 F. Supp. 3d 636, 659-660 (M.D. La. 2023) (citation omitted); *see*, LA. R.S. 23:921(C).
[24] *Affordable Roofing, Siding, and Gutters, Inc. v. Artigues*, No. 16-16872, 2017 WL 713693, at *3 (E.D. La. Feb. 23, 2017).
[25] *Austin v. Industrial Oils Unlimited, L.L.C.*, 2020 WL 5834799 at *5-6 (W.D. La. 9/30/20).
[26] *SWAT* 24, 808 So.2d at 298 (citation omitted).
[27] R. Doc. 17 at 10-12.
[28] R. Doc. 2-1 at 8-10.

Mexico, twenty-eight (28) counties in Oklahoma, and thirty-eight (38) counties in Arkansas.

McDaniel avers that "[t]here is no evidence that Delta Fuel conducts business in all these locations."[29] McDaniel further argues that Delta Fuel's assertion that it markets services, prospects for services, and/or engages in business with clients in every parish and county listed as part of the Territory is not enough to satisfy the second prong of the geographical limitation requirements set forth in La. R.S. 23:921(C).[30]

In response, Delta Fuel offered the testimony of Vegas at the preliminary injunction hearing. Vegas testified that the parishes and counties listed as part of the Territory were specifically determined based on where its sales representatives live, work, and/or actively market Delta Fuel's business. He also produced a list of Delta Fuel's sales by location for the period of 2020 through 2024.[31] He testified that this list only included locations where Delta Fuel's products were delivered or services were performed, not simply where invoices were mailed.

Employers are not permitted to lock former employees out of markets in which the employer does not operate.[32] The geographical limitation set forth in La. R.S. 23:921(C) consists of "two independent requirements: (a) the parishes where competition is restrained must be 'specified' with the agreement itself' and (b) a

---

[29] R. Doc. 17 at 11.
[30] R. Doc. 17 at 11.
[31] R. Doc. 27.
[32] *Waguespack*, 185 F. Supp. 3d at 929.

substantive limit requiring non-competition agreements to be 'limited in enforcement to parishes where the first employer actually carries on a like business therein.'"[33] District courts are to engage in a factual inquiry considering evidence regarding the nature and extent of the employer's business to determine whether the employer "carried on" a like business in each of the parishes or counties listed in the parties restrictive agreement.[34] Under this standard, an ex-employer may "prohibit competition and solicitation in a listed parish or county if it has actual customers in, has a physical location in, or performs business activities in the listed area."[35] However, for mere solicitation of customers in a given county to amount to the carrying on of like business "the solicitation must – at the very least – be active, targeted, and specific."[36] If a restrictive agreement is geographically overbroad, "the court may rely on a severability provision to reform the overbroad provision and excise the offending language."[37]

There is no dispute that the list of the counties and parishes defining the Territory meets the specificity requirement of La. R.S. 23:921(C). The issue is whether Delta Fuel actually carries on business in these areas. The Court is persuaded by the testimony of Delta Fuel's President, and the documentary evidence produced at the hearing, that Delta Fuel is actively engaged in business in most of

---

[33] *Waguespack*, 185 F. Supp. 3d at 929.
[34] *Arthur J. Gallagher & Co. v Babcock*, 339 F. App'x 384, 387 (5th Cir. 2009).
[35] *Deep South*, 652 F. Supp 3d at 671.
[36] *Deep South*, 652 F. Supp 3d at 672.
[37] *Brock Services, L.L.C. v. Rogillio,* 936 F.3d 290, 297 (5th Cir. 2019).

the counties and parishes listed in the Territory.[38] However, the Territory consists of a not-insignificant number of counties and one parish that were not included in the list of Delta Fuel's sales from 2020 through 2024. Therefore, the Court finds that inclusion of these locations in the Agreement is overbroad:

- Louisiana: St. Helena.

- Mississippi: Carroll, Coahoma, Greene, Grenada, Marion, Sharkey, Simpson, Sunflower, Tallahatchie and Tate.

- Texas: Camp, Franklin, Garza Kent, Goliad, Gray, Hemphill, Hudspeth, Jeff Davis, Lavaca, Leon, Lipscomb, Lynn, Maverick, Ochiltree, Refugio, Roberts, Schleicher, Titus, Trinity, Walker, Wheeler, Willacy, and Wilson.

- Oklahoma: Alfalfa, Beckham, Caddo, Garfield, Jefferson, Love, Marshall, Mills, Murray Roger, and Washita.

- Arkansas: Ashley, Bradley, Calhoun, Conway, Crawford, Franklin, Cleveland, Johnson, Lincoln, Little River, Nevada, Logan, Lonoke, Monroe, Pope, St. Francis, Van Buren, Cleburne, and White.

Nonetheless, the Agreement contains a severability clause which provides in pertinent part: "a court of competent jurisdiction may, if and to the extent permitted by law, sever, amend, reform, revise, or modify any provision or provisions deemed

---

[38] McDaniel objected to Delta Fuel's exhibit which reflected the locations of its sales under Federal Rule of Evidence 1006. The Court overruled the objection but noted that McDaniel's arguments would be considered concerning the weight the Court should give the evidence. *See J.P. Morgan Securities, LLC v. Manne,* 2016 WL 7223358, at*2 (M.D. La. 2016) ("Inasmuch as the grant of preliminary injunction is discretionary, the trial court should be allowed to give even inadmissible evidence some weight when it is thought advisable to do so in order to serve the primary purpose of preventing irreparable harm before a trial can be held….").

overly broad … to render such provision or provisions valid and enforceable … ."[39] Accordingly, the Court reforms the Agreement by excluding the above listed counties and parish from the Territory.

     b.  <u>Scope of Restricted Activities</u>

McDaniel asserts that the Agreement is overbroad, and therefore unenforceable, because it limits her from "engaging in any position that in any way sells or supplies the oil and gas industry whether or not the business actually competes with Delta Fuel's business."[40] More specifically, McDaniel contends that Delta Fuel does not sell LNG or CNG and therefore cannot prevent her from engaging in activity she did not perform while in its employ.

When an agreement covered by La. R.S. 23:921 contains a definition of the employer's business, it cannot be overly broad, such that it prevents former employees from engaging in more activities than were performed for the former employer.[41] "An employer is only entitled to keep ex-employees from competing with the employer's actual business, not some overblown contractual definition of business designed to cover the proverbial waterfront and keep ex-employees from being able to make a living in any segment of the ex-employer's industry."[42] To comply with La. R.S. 23:921(C), "a noncompete agreement must identify with reasonable certainty those areas which the employer lawfully may prohibit competition."[43]

---

[39] R. Doc. 27-2 at 6, ¶ 8.
[40] R. Doc. 17 at 12.
[41] *Baton Rouge Computer Sales, Inc. v. Miller-Conrad*, 767 So. 2d 763, 764 (La. App. 1 Cir. 5/23/00); *Paradigm Health System, L.L.C. v. Faust*, 218 So. 3d 1068, 1073 (La. App. 1 Cir. 11/6/20).
[42] *Vartech Systems, Inc. v. Hayden*, 951 So. 2d 247, 259 (La. App. 1 Cir. 12/20/2006).
[43] *Deep South*, 652 F.Supp. 3d at 662 (citing *Brand Energy Sols., LLC v. Gilley*, No. 16-1025, 2017 WL

Here, the Agreement provides that Delta Fuel:

> is engaged in the business of petroleum, chemical, and lubricant distribution at the wholesale and retail level, including but not limited to propane, gasoline, diesel, specialty chemicals, <u>other bulk fuels</u>, and other lubricants, including the sale, supply, storage, and service of petroleum, petroleum products, and other accessories or appurtenances, as well as reliability services, training, and the development and implementation of programs designed to maintain and extend the life of lubricants, fuels, and related equipment, and other related businesses engaged in by Company during the term of [McDaniel's] employment with the Company ("the Business").[44]

Despite the extensive testimony presented regarding whether Delta Fuel's business of selling "other bulk fuels" includes LNG or CNG, the Court need not "delve into the minutiae of different [fuel] available for sale"[45] because Delta Fuel clearly engaged in attempting to sell LNG through McDaniel during her employment. The Court need not explore the outer limits of the scope of the definition of Delta Fuel's business when the testimony at the preliminary injunction hearing revealed that the pertinent facts are not in dispute. McDaniel sold bulk fuel, including diesel, and quoted LNG services and products for Delta Fuel. The Court finds that the scope of the restricted activities is not overly broad and was understood by the parties.

**2. There is a substantial likelihood that McDaniel has breached her contractual obligations.**

To establish a breach of contract claim, a plaintiff must show "(1) the obligor's undertaking an obligation to perform, (2) the obligor failed to perform the obligation,

---

238917, at *6 (W.D. La. Jan. 18, 2017)).
[44] R. Doc. 2-1 at 2, Recitals (emphasis added).
[45] *Austin*, 2020 WL 5834799 at *8.

and (3) the failure to perform resulted in damages to the obligee."[46] Consequently, for the purposes of the motion for a preliminary injunction, the Court must determine whether Delta Fuel has set out a prima facie case for breach of the Agreement's non-competition, non-solicitation, and non-disclosure provisions. McDaniel maintains that **(a)** she is not competing with Delta Fuel and she has not solicited any Delta Fuel's clients; and **(b)** she has not used Delta Fuel's client information.

    a. <u>Non-Competition and Non-Solicitation</u>

As to the first element required for breach of contract claims, the Agreement shows that McDaniel undertook obligations to not a) "engage in any business that directly or indirectly competes with or is similar to" Delta Fuel's business and b) "solicit, request, seek, or obtain … the business of any person or entity that is a client of [Delta Fuel] during [McDaniel]'s employment…"[47] McDaniel does not dispute that she agreed not to compete against Delta Fuel and not to solicit Delta Fuel's clients.

The second element requires Delta Fuel to show that McDaniel failed to perform these obligations. McDaniel candidly testified that after her employment ended with Delta Fuel, she visited Delta Fuel's customer sites on behalf of her new employer, TFS Gas, in order to convince them to purchase LNG. McDaniel also testified that because of her efforts to sell LNG, at least one of Delta Fuel's customers ordered diesel through her from Texas Fuel, instead of Delta Fuel.

The third element requires Delta Fuel to show the McDaniel's failure to

---

[46] *Deep South*, 652 F. Supp. 3d at 664 (citations omitted).
[47] R. Doc. 2-1 at 4, Section 2(b).

perform these obligations resulted in damages. Delta Fuel offered testimony through one of its employees that Delta Fuel suffered a loss of revenue of up to $140,000 as a result of McDaniel's actions.

These facts are sufficient to establish a prima facie case that McDaniel breached her contractual obligations not to compete or solicit.

b. Non-disclosure

As to the first element, McDaniel's non-disclosure obligations arise from her pledge that "during and after the end of [her] employment relationship with [Delta Fuel], [she] will not disseminate, divulge, misappropriate, or use for [her] own or any third party's benefit any Confidential Information."[48] McDaniel argues she did not consider the information to be confidential because it is "nothing more than phone numbers for various oil and gas operators and their employees, information that is available to the general public via the internet or by anyone who is willing to use public information regarding the location of drilling rigs and traveling to the rigs to speak with the people working at those rigs."[49] McDaniel also asserts that these contacts were developed in her personal capacity during her twenty-two year career in oil and gas sales. Despite these assertions, the Agreement clearly defines confidential information, in relevant part, as "… client lists; client information; client source lists … ."[50] McDaniel does not dispute that Delta Fuel considered its client information to be confidential and that she agreed to this non-disclosure provision.

---

[48] R. Doc. 2-1 at 3, Section 1(c).
[49] R. Doc. 17 at 14.
[50] R. Doc. 2-1 at 2-3, Section 1(b).

Therefore, Delta Fuel's customer lists and client cellphone numbers and other contact information, is non-public and confidential under the Agreement.

The second element requires Delta Fuel to show that McDaniel failed to perform this obligation. There was no conflicting testimony regarding whether McDaniel may still be in possession of some of Delta Fuel's client information. Delta Fuel alleges that McDaniel is using, and will presumably continue to use, its client information for her own and/or her new employer's benefit, in violation of her non-disclosure obligation.[51] McDaniel maintains that she returned the contact information for all known Delta Fuel customers and that she has not shared the contact information with any other employee of TFS Gas and/or Texas Fuel.[52] Notably, the Chief Executive Officer of TFS Gas, Mason Duncan, testified that he has not relied upon any client information from McDaniel for sales. However, based on the evidence presented at the hearing, Delta Fuel has made a prima facie showing that it is likely that McDaniel has relied on this confidential information to make LNG sales and therefore violated the non-disclosure provision of the Agreement.

Finally, Delta Fuel has demonstrated that the use of Delta Fuel's client contacts has likely contributed to the damage described above.

For these reasons, the Court finds that Delta Fuel has established a prima facie case the McDaniel has breached the non-disclosure provision of the Agreement.

---

[51] R. Doc. 2 at 4; *see also*, R. Doc. 1 at 6-7.
[52] R. Doc. 17 at 14-15.

### B. There is a substantial threat that failure to grant the injunction will result in irreparable injury to Delta Fuel.

Typically, "[a] plaintiff seeking a preliminary, as opposed to a permanent, injunction must show that the irreparable injury will occur 'during the pendency of the litigation' unless the preliminary injunction issues."[53] However, Louisiana Revised Statute 23:921 mandates the Court to issue injunctive relief upon proof of the obligor's failure to perform, without the necessity of proving irreparable injury.[54] Having found that Delta Fuel has set out a prima facie case for breach of contract, the Court is required to issue injunctive relief in light of McDaniel's failure to perform her contractual obligations. Nonetheless, the Court finds that irreparable injury will occur if the preliminary injunction does not issue and is persuaded by the testimony of Vegas that a customer will not likely purchase fuel from two different providers, if they can purchase it from one. McDaniel's own testimony confirms this point, as she testified that a Delta Fuel customer ordered diesel through her from Texas Fuel, even though she was there to sell LNG. Without injunctive relief, Delta Fuel, which as Vegas testified, has been in business for 48 years, may lose client relationships and good will, the loss of which is not quantifiable.

---

[53] *Rimkus Consulting Group, Inc. v. Cammarata*, 255 F.R.D. 417, 433 (S.D. Tex. 2008) (quoting *Justin Inds., Inc. v. Choctaw Secs., L.P.*, 920 F.2d 262, 268 n. 7 (5th Cir. 1990)).
[54] LA. R.S. 23:921(H) ("Any agreement covered by Subsection B, C, E, F, G, J, K, or L of this Section shall be considered an obligation not to do, and … upon proof of the obligor's failure to perform, and without the necessity of proving irreparable injury, a court of competent jurisdiction shall order injunctive relief enforcing the terms of the agreement.").

### C. The threatened injury outweighs any damage that the injunction may cause McDaniel.

The Court finds that the threatened injury to Delta Fuel's business if injunctive relief is denied heavily outweighs the threatened injury to McDaniel if injunctive relief is granted. Indeed, the harm to the McDaniel (a restraint of a relatively short duration) appears slight, while the damage to the Plaintiff (loss of clients to a competitor) appears substantial. Moreover, as detailed below, the Court will tailor its order to minimize the harmful effects on McDaniel. For example, McDaniel may continue to work for her current employer or within the oil and gas industry provided that she does not compete with Delta Fuel's business, solicit Delta Fuel's clients, or misappropriate or use Delta Fuel's client information.

### D. A preliminary injunction will not disserve the public interest.

It is clearly in the public's interest for the courts to provide injunctive relief to preserve contractual obligations. Employers have a substantial interest in ensuring these contracts are enforced. The clear purpose of Delta Fuel's restrictive covenants in the Agreement were to prevent employees from doing precisely what McDaniel managed to do: invade Delta Fuel's client base after leaving the company.

### E. The Court will not require Delta Fuel to post security.

"The court may issue a preliminary injunction … only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."[55]

---

[55] FED. R. CIV. P. 65 (emphasis added).

McDaniel asserts that any order restraining her from working and earning a living is likely to result in great financial harm and that Delta Fuel should be responsible for indemnifying her from that harm.[56] However, in the Agreement McDaniel recognized that Delta Fuel shall be entitled to injunctive relief compelling or ordering compliance with the Agreement without the necessity of posting any security or bond.[57] Further, it is within the Court's discretion "to require no security at all."[58] Accordingly, the Court will not set a bond for the issuance of the preliminary injunction.

## CONCLUSION

Upon consideration of the Verified Complaint, Plaintiff Delta Fuel Company, LLC's Motion for Preliminary Injunctive Relief (R. Doc. 2), Defendant Natalie McDaniel's Memorandum in Opposition (R. Doc. 17), Plaintiff's Reply Memorandum (R. Doc. 24), and the evidence presented at the hearing, the Court finds that there is a substantial likelihood that Delta Fuel can succeed on the merits of its breach of contract claims; Delta Fuel will suffer irreparable harm and loss if McDaniel is permitted to compete against Delta Fuel by soliciting Delta Fuel's customers to do business with TFS Gas, Texas Fuel, and/or any other third party; greater injury will be inflicted upon Delta Fuel by the denial of interim injunctive relief than would be inflicted upon McDaniel by the granting of such relief; and the public interest will be served by the issuance of injunctive relief.

---

[56] R. Doc. 17 at 20.
[57] R. Doc. 2-1 at 5, Section (b).
[58] *Corrigan Dispatch Company, v. Casa Guzman, S.A.,* 569 F.2d 300, 303 (5th Cir. 1978)

## **ORDER**

Accordingly, **IT IS ORDERED** that Plaintiff Delta Fuel Company, LLC's Motion for Preliminary Injunction (R. Doc. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant, Natalie McDaniel, is hereby **RESTRAINED, ENJOINED, and PROHIBITED** from servicing, soliciting, or attempting to solicit any customer of Delta Fuel, for whom McDaniel had responsibility or was privy to information about while employed at Delta Fuel; and divulging, revealing, communicating, using, or permitting use of Delta Fuel's confidential information, including client contact information.

A preliminary injunction is hereby issued without bond, prohibiting and enjoining McDaniel This Order is effective immediately and continues until further order of the Court.

**THUS DONE AND SIGNED** this 30th day of January, 2025.

                                               **JERRY EDWARDS, JR.**
                                               **UNITED STATES DISTRICT JUDGE**